CITY OF CINCINNATI *v.* CINCINNATI & HAMILTON TRACTION COMPANY ET. AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

No. 10.   Argued January 24, 25, 1916; restored to docket for reargument June 12, 1916; reargued October 26, 27, 1916; restored to docket for reargument May 7, 1917; reargued October 17, 18, 1917.—Decided January 7, 1918.

Corporations of Ohio claimed the right to operate a street railway in Cincinnati according to the terms of various grants, etc., under which it had been built in sections or links. A revocable ordinance of the city council, after reciting that as to portions of the streets so occupied, "alleged grants" had expired, and on others there never had been any grants and the companies had no longer any right to occupy the same, provided that the companies might continue

to operate, but only from day to day, and subject to new and material conditions, as to fares, transfers, etc.; that should it be adjudged that they were without continuing right in respect to portions only of the streets occupied, the ordinance should be construed to forbid further operation on such portions except on compliance with all of its terms and conditions; that continued operation "on said streets" should be deemed an acceptance by the companies of the ordinance and all its terms; that in case they refused or failed to comply with it on its effective date, the city solicitor should "take such legal proceedings as may be proper and necessary" to enforce its provisions, or to require them "to abandon the streets covered by this ordinance, and to remove their tracks from said streets." Averring that the ordinance impaired and attempted to impair the obligations of the several grants etc., that its enforcement would deprive them of their property without due process or compensation, and that, under it, the city threatened to, and unless restrained would, interfere with and prevent the maintenance and operation of the railway over the routes described in the grants aforesaid and under authority and in accordance with the terms thereof, thus causing irreparable injury, the companies, by their bill, filed in the District Court before the ordinance became effective, prayed that it be decreed void and that the city be perpetually enjoined from such interference, in any way, as to the whole and any part of the railway, and from enforcing, or taking any steps to enforce, the ordinance in whole or in part. The city's answer denied jurisdiction, that the bill stated a cause of action, that the companies had any right to operate as to certain portions of the line, that the city would interfere with or prevent the maintenance and operation by plaintiffs of the said railway, or cause any damage or injury to plaintiffs; and averred that enforcement of the ordinance was only authorized, and only would be sought, by due court proceedings. After full hearing the District Court upheld the grants, etc., involving complicated questions, under the laws of Ohio, and granted the injunction as prayed. *Held* (1) that the jurisdiction of the District Court was properly invoked, and that it had power to adjudicate the issues presented; but (2) that, as counsel for the city in this court had plainly conceded, what did not sufficiently appear by the answer, viz: that, except as it authorized proceedings in court the ordinance could have no effect prior to a judicial determination and that no other steps could be taken under it, or would be attempted, by the city's officers to enforce it, the decree should be modified so as to exclude any finding upon the validity of the franchises and rights claimed by plain-

tiffs, and so as to limit affirmative relief to an injunction restraining the city (a) from taking any steps, other than necessary court proceedings, to enforce the ordinance, prior to final adjudication of the controversies involved, and (b) from ever setting up claim that plaintiffs' continued operation of cars over streets now used, pending such final adjudication, does or will amount to an acceptance of the ordinance or in any way prejudice their rights.

Upon appeal, the cause is subject to review upon both law and facts, and that relief should be granted which is proper upon the case as it develops in this court.

Modified and affirmed.


THE case is stated in the opinion.


Mr. *Charles A. Groom*, with whom Mr. *Constant Southworth* was on the briefs, for appellant.[1]


Mr. *Alfred C. Cassatt* and Mr. *Lawrence Maxwell*, with whom Mr. *George H. Warrington* and Mr. *Ellis G. Kinkead* were on the briefs, for appellees.


MR. JUSTICE McREYNOLDS delivered the opinion of the court.


The Cincinnati and Hamilton Traction Company is owner and The Ohio Traction Company lessee and operator of an electric railway line extending from Vine Street,

---

[1] At the first hearing Mr. *Constant Southworth* argued for the appellant. Mr. *Walter M. Schoenle* was with him on the brief.

The arguments went deeply into questions of local law touching the franchises claimed by plaintiffs, which are not passed on by the court. Upon the question of jurisdiction, in addition to the authorities mentioned in the dissenting opinion, the city cited, among others, the following cases: *Mindler* v. *Georgia*, 183 U. S. 559; *Barney* v. *New York*, 193 U. S. 430; *Louis. & Nash. R. R. Co.* v. *Garrett*, 231 U. S. 298; *Seattle Elec. Co.* v. *Seattle &c. Ry.*, 185 Fed. Rep. 365; *Louisville Tr. Co.* v. *Cincinnati*, 76 Fed. Rep. 296; *Seaboard Air Line* v. *Raleigh*, 219 Fed. Rep. 573; *Mallinckrodt Works* v. *St. Louis*, 238 U. S. 41.

Cincinnati, northward along Erkenbrecher Avenue, Carthage Pike, Wayne Avenue, Springfield Pike, etc., some five or six miles to the city limits. It was built in sections or links under grants, ordinances, permissions, .contracts, etc., whose validity, effect, and continuation have given rise to conflicting contentions, based primarily upon different interpretations of statutes and laws of Ohio. April 21, 1914, the City Council passed the ordinance copied in the margin.[1]

---

[1] AN ORDINANCE No. —.

Specifying the terms and conditions upon which The Cincinnati and Hamilton Traction Company and The Ohio Traction Company, as its lessee, may operate street cars on certain streets of the city, and authorizing the City Solicitor to take legal proceedings to enforce this ordinance.

Whereas, The Ohio Traction Company, as lessee of The Cincinnati and Hamilton Traction Company, is now operating street cars on certain streets of the City of Cincinnati; and

Whereas, on portions of the streets so occupied and used, alleged grants have heretofore expired and on other portions, including that part of Carthage Pike formerly known as Springfield Pike there never have been any grants and said companies have no longer any right to occupy the same; now, therefore,

Be it ordained by the Council of the City of Cincinnati, State of Ohio:

Section 1. That upon the terms and conditions in this ordinance specified, and upon no other, permission is hereby granted to said The Cincinnati and Hamilton Traction Company and to The Ohio Traction Company, as its lessee, to continue from day to day only from the date on which this ordinance becomes effective to operate street cars on the following streets, to wit:

Erkenbrecher Avenue from Vine Street and Erkenbrecher Avenue to Carthage Avenue; thence north on Carthage Avenue and Carthage Pike (formerly called Main Street) to Lockland Avenue, excepting the portions in the municipalities of St. Bernard and Elmwood Place; thence north on Lockland Avenue and Anthony Wayne Avenue to the northern boundary of the City through the district formerly known as Hartwell; and also from the intersection of Anthony Wayne and Woodbine (formerly called Rural) Avenues westwardly over Woodbine Avenue and over Decamp Avenue to Carthage (formerly called Springfield) Pike; thence north on said Carthage Pike to the northern

Shortly before the ordinance was to become effective, appellee companies—both Ohio corporations—filed a bill in the United States District Court, Southern District of Ohio, wherein they set out their interest in the railway, the various grants, ordinances, contracts, etc., under which it had been constructed, together with rights claimed. It then alleged: "Notwithstanding the contract rights of plaintiffs as hereinabove set forth, the defend-

---

boundary of the City in the District formerly known as Hartwell; on the tracks now existing in said streets.

Section 2. On and after the taking effect of this ordinance the operation of street cars on said streets shall be subject to the same terms and conditions as existed under the prior alleged grants, if any, so far as not inconsistent with the provisions of this ordinance, and shall be subject to the following conditions:

A. That the necessary arrangements be made to operate cars from the aforesaid northern boundary of the City over said streets to Sixth and Walnut Streets in substantially the same manner and with substantially the same frequency as now, and as a continuous line; and that street cars shall be operated.

B. That for a continuous trip between any two points between the aforesaid northern boundary of the City and Sixth and Walnut streets the fare for each passenger shall not exceed five (5c) cents except that for children under ten years of age the fare shall not exceed three (3c) cents, and children in arms shall be carried free.

C. That the necessary arrangements be made so that without additional charge passengers on street cars operated on the streets mentioned in Section 1, and passengers on street cars operated by The Cincinnati Traction Company may transfer to and from either to the other; but transfers given hereunder shall be good only on the first street car available and on one not going in a substantially parallel and opposite direction.

D. That during the operation of this ordinance the Director of Public Service may make from time to time further and reasonable regulations as to the character, mode, manner and frequency of service and maintenance of the street cars and tracks.

Section 3. Should it be adjudged that on only a portion or portions of the said streets now occupied by the tracks of said The Cincinnati and Hamilton Traction Company the right to operate street cars has never been granted, or if granted has ceased to exist, then this ordi-

ant, The City of Cincinnati on or about the 21st day of April, 1914, passed  .  .  . [the ordinance copied, *ante*]; in and by said ordinance said City repudiated the grants aforesaid and thereby impaired and attempted to impair the obligations of the aforesaid contracts and each of them, in violation of Article I, Section 10, of the Constitution of the United States, and the enforcement of said ordinance will deprive plaintiffs of their property without due process of law and without compensation, in

---

nance shall be construed to forbid the further operation of street cars on such portions except on the compliance by the said The Cincinnati and Hamilton Traction Company and The Ohio Traction Company and each of them with all of the terms and conditions specified in this ordinance.

Section 4. The continuing by said companies, or either of them, to operate street cars on said streets shall be deemed an acceptance of this ordinance and of all the terms hereof.

Section 5. In case The Cincinnati and Hamilton Traction Company and The Ohio Traction Company, or either of them, refuse or fail to comply with the terms of this ordinance upon the taking effect hereof, the City Solicitor shall be, and he is hereby authorized and directed to take such legal proceedings as may be proper and necessary to enforce the provisions of this ordinance, or to require the said companies and each of them to abandon the streets covered by this ordinance, and to remove their tracks from said streets.

Section 6. Should The Cincinnati and Hamilton Traction Company and The Ohio Traction Company, or either of them, surrender or transfer all or any part of their rights, if any, to operate street cars over all or any part of the aforesaid streets, to The Cincinnati Street Railway Company, or to The Cincinnati Traction Company, either or both, this ordinance shall apply also to the two last named companies, either or both as the case may be.

Section 7. Should any part of this ordinance be adjudged invalid, such adjudication shall not affect the validity of the remainder of this ordinance.

Section 8. This ordinance and any rights granted or acquired hereunder are subject to repeal, amendment, or revocation in whole or in part at any time at the will of Council.

Section 9. This ordinance shall take effect and be in force from and after the earliest period allowed by law.

violation of the Constitution of the. United States and
particularly Article XIV in amendment thereof." "The
defendant, The City of Cincinnati, by its agents and em-
ployes, under the pretended authority of the ordinance
of the City of Cincinnati aforesaid, threaten to and will,
unless restrained by order of this Court, interfere with
and prevent the maintenance and operation by plaintiffs
of said electric street railway over the routes described
in the grants aforesaid and under authority and in ac-
cordance with the terms and conditions thereof, which
will cause great and irreparable injury to these plaintiffs
for which they have no adequate remedy at law." It
prayed: "That the Court decree said ordinance passed
April 21, 1914, to be null and void, and that the defendant,
The City of Cincinnati, and its officers, agents and em-
ployes, be enjoined by a restraining order, preliminary
injunction, and final decree, from interfering or attempt-
ing to interfere in any way with the maintenance and
operation, or either, by the plaintiffs, or either of them,
of said line of electric street railway or any part thereof;
and from enforcing or attempting or taking any steps to
enforce the pretended ordinance of The City of Cincin-
nati, aforesaid, or any part thereof, and from taking any
action which would alter, impair, limit, or destroy, the
right and title of plaintiffs under their said grants and
contracts."

Answering, the City denied jurisdiction of the court;
that the bill stated a cause of action; that complainant
companies had any right to operate a railway on Erken-
brecher Avenue or over portions of Carthage Pike or over
streets and roads formerly in the Village of Hartwell, etc.
And further "the defendant denies that under the au-
thority of said Ordinance, or otherwise, it will, unless
restrained by this court, interfere with or prevent the
maintenance and operation by the plaintiffs, or either of
them, of said electric street railway, or cause any damage

or injury of any kind to the plaintiffs, or either of them, and defendant avers that the enforcement of said Ordinance is only authorized and will only be sought by and through an order of a Court of competent jurisdiction first had and obtained, and after a hearing on due and reasonable notice to all interested parties."

Having finally heard the cause upon a record presenting many difficult problems arising under local laws, the trial court sustained its jurisdiction, adjudicated in favor of the companies in respect of the grants, ordinances, and contracts relied upon, and granted an injunction as prayed. The City has appealed and the questions presented below have again been elaborately discussed before us.

There is radical disagreement concerning interpretation and effect of the Ordinance of April 21st. Counsel for appellees maintain: "The City does not seek to eject plaintiffs from the occupancy of any particular part of the streets in question, but undertakes by the ordinance complained of to require plaintiff, in disregard of its rights under existing contracts, some of which the ordinance assumes may be good, either to abandon its line over the route in question, or to operate it on a day-to-day license and at a reduced fare." "The question, therefore, is not whether there is one bad link, but whether there is one good link, because, if there is a good link, the ordinance impairs its obligation."

"All parts of the ordinance go into operation at once at 'the earliest period allowed by law,' which is thirty days after it is filed with the mayor. The day the ordinance takes effect it gives to passengers the right to a reduced fare and transfers; and at the same time the companies, by operating on the said streets, are deemed to have accepted all the terms of the ordinance, which apply to all the links. This operation of the ordinance, and these results, do not await any litigation or any adjudication of any kind."

"While Section 5 authorizes and directs the city solicitor in the event of non-compliance to take the proper legal proceedings to enforce the ordinance, they might not be taken, and the operation of the ordinance does not await the beginning or outcome of such proceedings, nor is the city precluded by Section 5 from enforcing it in any other way, by tearing up the tracks or otherwise."

In the brief for appellant it is said: "These two provisions [§§ 3 and 5] clearly indicate that the rights of the City must be and will. be established only after an orderly procedure through the courts, and it was contemplated and directed that this should be through legal proceedings brought by the Solicitor." "The fair reading of Section 4 is that the operation of the cars over the portion of the line where it is adjudged appellees have no franchise shall be an acceptance of the ordinance." During the oral argument here counsel for the City expressly affirmed, that properly construed and except as it authorized proceedings in court, the ordinance could have no effect prior to a judicial determination of the parties' rights; that until this was had no other steps could be taken, or would be attempted, to enforce the ordinance, and non-compliance therewith would in no wise injuriously affect the appellees. And, moreover, that the above quoted paragraph from the answer was intended to express that view.

We think the jurisdiction of the court below was properly invoked and that it had power to adjudicate the issues presented. *Detroit* v. *Detroit Citizens' Street Ry. Co.*, 184 U. S. 368; *Owensboro* v. *Cumberland Telephone Co.*, 230 U. S. 58.

As the cause is here upon appeal, it is subject to review upon both law and facts; we should grant the relief proper under circumstances now disclosed. *Wiscart* v. *D'Auchy*, 3 Dall. 321, 327; *Capital Traction Co.* v. *Hof*, 174 U. S. 1, 37; Daniell's Ch. Pl. & Pr. (5th ed.), *1484, *1489; *Elliott* v. *Toeppner*, 187 U. S. 327, 334.

The answer failed to set out with adequate precision, if at all, what counsel now claim were the powers of the City's officers under, and its purposes in respect of, the ordinance—otherwise a different result might have been reached in the trial court. Accepting, and for all purposes of the cause relying upon representations and admissions of counsel for the City as above detailed, we conclude that the decree below should be modified so as to exclude from it any finding concerning validity of franchises involved or rights claimed by appellees and to limit the affirmative relief granted to an injunction restraining the City (1) from taking any steps to enforce the ordinance (except institution of necessary court proceedings) prior to final adjudication of controversies involved, and (2) from ever setting up a claim that appellees' continued operation of cars over streets now used pending such final adjudication does or will amount to an acceptance of the ordinance by appellees, or in any way prejudice their rights.

As modified, the decree below is affirmed. Appellant will pay all costs.

*Modified and affirmed.*

MR. JUSTICE CLARKE, dissenting.

The opinion and decree announced in this case seem to me so unsupported by the record and so unusual in character that I am impelled, reluctantly, to state my reasons for dissenting from both.

The court finds that the District Court had and that this court now has jurisdiction in the case such as to warrant permanently enjoining the City of Cincinnati in the two respects stated in the opinion, and with instructions to limit its decree to such an injunction the case is remanded to the District Court, leaving open for further litigation the validity and effect of the Ordinance of April 21, 1914 (copied in the margin of the court's opinion) and of prior grants claimed by the plaintiffs.

Assuming as we must that if the District Court had jurisdiction of the cause it had authority to go forward and completely dispose of the controversy, this action taken by the majority of the court seems to me to be anomalous if not unprecedented.

But my dissent goes also upon the more fundamental ground that the District Court did not have, and that this court does not now have, any jurisdiction over the case, for reasons which I shall state as briefly as I may.

The bill alleges that the plaintiffs and the defendant are all Ohio corporations, and after setting out in detail the grants which had been made to the plaintiffs over the various routes described in the Ordinance of April 21, 1914, it continues in paragraphs thirteen and fourteen, as follows:

"13. Notwithstanding the contract rights of plaintiffs as hereinabove set forth, the defendant, The City of Cincinnati, on or about the 21st day of April, 1914, passed a certain alleged ordinance entitled, 'An Ordinance No. ——. Specifying the terms and conditions upon which the Cincinnati and Hamilton Traction Company and The Ohio Traction Company, as its lessee, may operate street cars on certain streets of the City, *and authorizing the City Solicitor to take legal proceedings to enforce this ordinance,*' a copy of which is hereto attached, marked Exhibit A, and made a part hereof; *in and by said ordinance* said City repudiated the grants aforesaid and thereby impaired and attempted to impair the obligations of the aforesaid contracts and each of them, in violation of Article I, Section 10, of the Constitution of the United States, and the enforcement of said ordinance will deprive plaintiffs of their property without due process of law and without compensation, in violation of the Constitution of the United States and particularly Article XIV in amendment thereof."

"14. The defendant, The City of Cincinnati, by its

agents and employees, under the pretended authority of the ordinance of the City of Cincinnati aforesaid, threatens to and will, unless restrained by the order of this Court, interfere with and prevent the maintenance and operation by plaintiffs of said electric street railway over the routes described in the grants aforesaid and under authority and in accordance with the terms and conditions thereof, which will cause great and irreparable injury to these plaintiffs for which they have no adequate remedy at law."

Since there is no diversity of citizenship there must be found in these two paragraphs, if anywhere in the bill, the assertion of federal right sufficient to give jurisdiction to the district court.

Confining our attention to paragraph 13. It seems to me very clear that this paragraph simply alleges that the City passed the ordinance, copied in the margin of the court's opinion, and thereby authorized "the City Solicitor to take legal proceedings to enforce" it. This allegation is emphasized by making the ordinance, by reference, a part of the bill, which in § 5 specifically provides that if the plaintiffs shall fail or refuse to comply with the terms of the ordinance "*the City Solicitor shall be, and he is hereby authorized and directed to take such legal proceedings as may be proper and necessary to enforce the provisions of this ordinance,*" or to require the companies to remove their tracks from the streets. The making of this declaration by ordinance, it is averred, impaired the obligation of the grants—the contract rights—which the plaintiffs claim they had when the ordinance was passed. No action other than the passing of the ordinance had been taken by the City when the bill for injunction was filed, in fact the ordinance did not become effective for thirty days after the bill was filed.

It has been decided by this court, within recent years, at least twice, that for a municipal corporation to thus

assert by resolution or by ordinance that a claim of contract right against it is not valid and to direct its legal representative to test in the courts the right so asserted, neither impairs the obligation of the contract assailed nor deprives the persons claiming under it of their property without due process of law.

In *Des Moines* v. *Des Moines City Ry. Co.*, 214 U. S. 179, it was asserted as a ground of federal jurisdiction that a resolution of the Des Moines City Council was a law which impaired the obligation of the contract which the railway company claimed to have with the City, and that if given effect it would deprive the company of its property without due process of law. The Circuit Court overruled an objection to its jurisdiction and granted an injunction against the enforcement of the resolution. This resolution, in terms, ordered the railway companies to remove their tracks, poles and wires from the streets, and in case of failure to do so within a time stated, the City Solicitor was "instructed to take such action as he shall deem advisable and necessary to secure the enforcement of the resolution." In a unanimous decision, this court reverses the lower court, saying:

"We are of opinion that this is not a law impairing the rights alleged by the appellee, and therefore that the jurisdiction of the Circuit Court cannot be maintained. Leaving on one side all questions as to what can be done by resolution as distinguished from ordinance under Iowa laws, we read this resolution as simply a denial of the appellee's claim and a direction to the City Solicitor to resort to the courts if the appellee shall not accept the city's views. The resolution begins with a recital that questions as to the railway company's rights have been raised, and ends with a direction to the City Solicitor to take action to enforce the city's position. The only action to be expected from a City Solicitor is a suit in court. We cannot take it to have been within the meaning of the

direction to him that he should take a posse and begin to pull up the tracks. The order addressed to the companies to remove their tracks was simply to put them in the position of disobedience, as ground for a suit, if the city was right."

Since the court "lays on one side" the distinction between a resolution and an ordinance, this decision seems clearly to rule the case at bar.

Again, in *Defiance Water Co.* v. *Defiance*, 191 U. S. 184, a claim to federal jurisdiction was based on a resolution of an Ohio city council, which it was claimed impaired the obligation of a contract which the water company had with the City. But this court, while finding that the record disclosed the City as claiming that the water company did not have a valid contract with the City and that a suit to test its validity had been instituted in a state court by the City Solicitor, nevertheless held that the action so taken was not obnoxious to the prohibition of the Federal Constitution, and the case was dismissed for want of jurisdiction.

The ordinance involved in this case, like the one in the *Des Moines Case*, having regard to all of its provisions, even including its title, seems very clearly to be no more than an assertion on the part of the City Council of what it considers the rights of the City to be, with authority and direction to the City Solicitor to resort to the courts to test the validity of the claims made, if they are denied by the traction companies, and the cases cited are authority sufficient, if indeed authority be needed, to justify the conclusion that such an expression of purpose to resort to the courts of the country and to abide by their decision, is not a law impairing the obligation of a contract, within the meaning of the Constitution.

A careful reading of this ordinance, especially of §§ 3 and 5, makes it convincingly clear that the writer of it must have had in mind the decisions which we have cited,

and that he has attempted, successfully it seems to me, to keep clearly within the law established by them.

The allegation in paragraph 14 of the bill, that the City, and its agents and employees, threaten to interfere with and prevent the operation of the street railways, states no invasion of a federal right, unless such action is threatened under warrant of an invalid ordinance. If the ordinance is valid it can add nothing to the other allegations of the bill and if invalid it is futile.

It is impossible for me, also, to share in the interpretation given to § 4 of the ordinance which makes it the subject of special injunctive relief. The section provides that the continuing to operate cars on the streets in controversy "shall be deemed an acceptance of this ordinance and of all of the terms hereof." Considering the ordinance as a whole, and not as if it were a group of independent provisions, if this section has any meaning at all, it cannot be more than an assertion on the part of the City, that if the companies, without formal acceptance, but without protest, should continue to operate the lines of railway, such action would be taken as implying an acceptance of the burdens as well as of the benefits of the ordinance. But such an implication of acceptance certainly could not prevail in any court against an assertion to the contrary by the companies.

If the companies really have contract rights in the streets, as they claim that they have, such rights cannot be impaired by the exercise of them, and if they do not have such rights, this declaration of the section cannot harm them, and therefore it cannot properly serve as a basis, either for jurisdiction or for an injunction.

Thus considering the question of jurisdiction as depending wholly upon the form of the allegations of the bill, it seems very clear that the federal courts are without jurisdiction in the case.

If, now, we consider the answer in the case we shall

find the strongest possible confirmation of the conclusion just arrived at.

The first paragraph of the answer denies the jurisdiction of the court and asserts that it is apparent on the face of the bill that it seeks to prevent the City of Cincinnati from resorting to the state courts for a decision of the controversy, and the answer to paragraph 13 of the bill, quoted above, is a special denial. Then follows this paragraph of the answer:

"13. The defendant denies that under the authority of said Ordinance, or otherwise, it will, unless restrained by this court, interfere with or prevent the maintenance and operation by the plaintiffs, or either of them, of said electric street railway, or cause any damage or injury of any kind to the plaintiffs, or either of them, *and defendant avers that the enforcement of said Ordinance is only authorized and will only be sought by and through an order of a court of competent jurisdiction first had and obtained, and after a hearing on due and reasonable notice to all interested parties.*"

It is difficult to imagine how a clearer statement than this could be framed on the part of the City, that the enforcement of the ordinance is only authorized and will only be sought by and through an order of a court of competent jurisdiction.

When to all this we add that not one word of evidence was offered on the trial tending to sustain the allegations of paragraph 14 of the bill, that the defendant threatened and intended to interfere with and unless enjoined would prevent the operation of the street railways, it becomes very clear that we have before us an utterly unsubstantial and purely paper attempt to carry into the federal courts a case which, because of its "many difficult problems arising under local laws," is peculiarly one for first decision in the state courts, with the right of revision in this court as provided for by law.

It has been for many years the constant effort, repeatedly declared, of Congress and of this court, to prevent the evasion of the Constitution and laws of the United States, by bringing into the federal courts controversies between citizens of the same State, *Bernards Township* v. *Stebbins,* 109 U. S. 341, 350, and it is because of my conviction that the integrity of the jurisdiction of the federal courts can best be preserved by refusing to extend it to doubtful cases that this dissent is written thus at length. My conclusion is that the plea of the defendant to the jurisdiction of the District Court should have been sustained on the face of the bill, but that if doubt were entertained as to this, then when the plaintiffs rested without attempting to prove their allegations of intended interference by the City with the operation of the roads, it became the duty of the District Court to proceed no further, but to dismiss the case, for the reason that it did not really and substantially involve a controversy properly within the jurisdiction of the court. Judicial Code, § 37.

There remains to be added only this: That, even if agreement were possible with the conclusion that the court has jurisdiction in the case, nevertheless I could not agree with the judgment rendered, for the reason that it seems to me very clear that the principal grant on which the plaintiffs rely, that from the County Commissioners dated March 23, 1889, expired on March 23, 1914, before the ordinance complained of was passed. My reason for this conclusion is that the Supreme Court of Ohio in 1905 held the Ohio Act of 1883 (80 Ohio Laws, 173) invalid because in violation of § 26 of Article II of the state constitution. *Railway Co.* v. *Railway Co.,* 5 Ohio C. C. (N. S.) 583, affirmed 73 Ohio St. 364. This is conclusive on all federal courts. If unconstitutional in 1905, the act was unconstitutional in 1889, when the grant by the Commissioners was made, and therefore

§§ 3439 and 2502 of the Revised Statutes of Ohio of 1880 were then in force and imposed the limitation of twenty-five years on all grants by County Commissioners. The doctrine that rights acquired before cannot be impaired by a change of judicial decision, has no application to this case, for the reason that there was no settled principle of decision in Ohio in cases such as we have here, where counties were concerned, prior to 1889, or at any other time, but, as the decisions abundantly prove, each case as it arose was disposed of on its own peculiar facts, e. g., *State* v. *Powers*, 38 Ohio St. 54 (1882), overruled in *State ex rel.* v. *Shearer*, 46 Ohio St. 275 (1889).

For the reasons here given and upon the authorities cited, my conclusion is that the decree of the District Court should be reversed, and the case remanded with instructions to dismiss the bill for want of jurisdiction.

Mr. Justice Brandeis concurs in this dissent.